UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| ROBERT PICCIRILLI, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | |
| THE TOWN OF HALIFAX, | * | |
| MASSACHUSETTS, THE BOARD OF | * | Civil Action No. 21-cv-11039-ADB |
| SELECTMEN OF THE TOWN OF | * | |
| HALIFAX, MASSACHUSETTS, HALIFAX | * | |
| SELECTMAN GORDON ANDREWS, in his | * | |
| individual and official capacities, and | * | |
| HALIFAX SELECTMAN ASHLEY DISESA, | * | |
| in her individual and official capacities, | * | |
| | * | |
| Defendants. | * | |
| | * | |

## MEMORANDUM AND ORDER DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND DENYING DEFENDANT ANDREWS' SPECIAL MOTION TO DISMISS

BURROUGHS, D.J.

Plaintiff Robert Piccirilli ("Piccirilli") sued the Town of Halifax, Massachusetts (the

"Town"), the Town Board of Selectmen (the "Board"), Selectman Gordon Andrews

("Andrews"), and Selectman Ashley DiSesa ("DiSesa," together with the Town, the Board, and

Andrews, "Defendants") and asserts that his civil rights were violated when he was not

reappointed to his position as the Town's Building Commissioner/Inspector of Buildings (the

"Building Commissioner").  [ECF No. 1 ("Compl.")].  Currently before the Court are (1)

Piccirilli's motion for a preliminary injunction, in which he asks the Court to enjoin Defendants

from permanently appointing and/or permanently hiring a third party to serve as the Building

Commissioner until the issues raised in his complaint are fully adjudicated, [ECF No. 2 at 2–3],

and (2) Andrews' special motion to dismiss, [ECF No. 12].  For the reasons set forth below, both motions are <u>DENIED</u>.

## I.      BACKGROUND

### A.      Factual Background

Piccirilli was employed as a local building inspector for the Town from 2000 until 2015. [Compl. ¶ 10].  In 2015, he was unanimously appointed by the Board to serve as the Town's Building Commissioner for a three-year term that expired on June 30, 2018.[1]  [<u>Id.</u> ¶ 11].  On June 12, 2018, he was unanimously reappointed by the Board for another three-year term that ended on June 30, 2021.  [<u>Id.</u> ¶ 12].  While serving as the Building Commissioner, Piccirilli did not have an employment contract with the Town.  [ECF No. 13-1 ("Seelig Aff.") ¶ 7].

#### 1.      The Board

The Board consists of three members.  [Compl. ¶ 22; Seelig Aff. ¶ 3].  Andrews and DiSesa currently serve as Board members, but they were not Board members when Piccirilli was originally appointed in 2015 or reappointed in 2018.  [Compl. ¶ 13].  Andrews has served on the Board since 2019.  [<u>Id.</u> ¶ 14].  DiSesa campaigned for a contested seat on the Board in 2021.  [<u>Id.</u> ¶ 18].  While she was campaigning, Andrews openly and actively endorsed DiSesa.  [<u>Id.</u> ¶ 19]. DiSesa was elected to the Board on May 15, 2021 and was sworn in on May 17, 2021.  [<u>Id.</u> ¶¶ 20–21].

---

[1] The Building Commissioner is responsible for "the planning, organizing and supervision of inspection work to enforce the provisions of the state building code, to ensure compliance with safety, structural, light, ventilation and other pertinent local bylaws; oversees the issuance of required permits applicable to building construction; [and] reviews plans for zoning compliance."  [ECF No. 13-1 ¶ 5].

2.      The May 27, 2021 Board Meeting

Piccirilli avers that eight Town employees, including him, held positions that were due to expire on June 30, 2021.  [Compl. ¶ 24].  Prior to his term ending, Piccirilli told the Board that he wanted to be reappointed.  [Id. ¶ 25].  According to Piccirilli, for at least the last decade, every salaried Town employee who requested reappointment at the end of an employment term was reappointed.  [Id. ¶ 26].

Piccirilli's appointment was on the agenda for the May 27, 2021 Board meeting.  [Seelig Aff. ¶ 11].  Piccirilli contends that, at the meeting, the Board unanimously reappointed seven of the eight officials whose terms were set to expire on June 30, but took no action on Piccirilli's reappointment.  [Compl. ¶¶ 27–28].  Andrews recused himself from any discussion of Piccirilli's position.  [Id. ¶ 29].  Piccirilli assumes that Andrews recused himself due to an ongoing lawsuit that was filed on May 19, 2020.  [Id. ¶¶ 15, 29].  In that lawsuit, Andrews sued Piccirilli, along with the Town and several other Town officials, alleging that they wrongfully authorized a subdivision on a property that abuts Andrews' property.  [Id. ¶¶ 15–16].  After Andrews' recusal, non-party Board member Troy Garron moved to reappoint Piccirilli, but DiSesa, without giving any explanation, refused to second Mr. Garron's motion.  [Id. ¶¶ 29–32].

Defendants dispute some of these details about the May 27, 2021 meeting.  They contend that nine positions were set to expire on June 30, 2021 and were on the agenda for the May 27, 2021 meeting.  [Seelig Aff. ¶¶ 11–12].  Defendants also aver that Piccirilli's attorney objected to DiSesa participating in the vote, and that DiSesa then moved to postpone consideration of Piccirilli's reappointment until the Board's next meeting so that she could consult with Town Counsel concerning Piccirilli's objection.  [Id. ¶¶ 15–16].  That motion passed.  [Id. ¶16].  The remaining eight positions were then considered for reappointment and the Board voted to reappoint seven of those eight employees.  [Id. ¶17].  Mr. Garron moved to reappoint the current

Town Counsel for another one-year term, but that motion did not receive a second and therefore did not pass, resulting in no further action being taken to reappoint the current Town Counsel. [Id. ¶18].  The Town Counsel position was then advertised, interviews were conducted, and the Board voted to appoint a new Town Counsel.  [Id. ¶ 19].

> 3.    The June 1, 2021 Board Meeting and Application Process

Piccirilli's appointment was placed on the agenda for the Board's next meeting on June 1, 2021.  [Compl. ¶ 33; Seelig Aff. ¶ 20].  Andrews again recused himself, Mr. Garron moved to reappoint Piccirilli, DiSesa refused to second the motion, and, as a result, the motion failed. [Compl. ¶ 34; Seelig Aff. ¶¶ 21–23].  DiSesa again gave no explanation for her refusal to second the motion.  [Compl. ¶ 35].  The Board then advertised the Building Commissioner position as open and requested applications.  [Id. ¶ 36; Seelig Aff. ¶ 24].

Piccirilli applied for the Building Commissioner position on June 4, 2021.  [Seelig Aff. ¶ 25].  The Town received a total of six applications for the position and all applicants were invited to interview.  [Id. ¶ 27].  Five candidates, including Piccirilli, were actually interviewed. [Id. ¶ 29].  Andrews has recused himself from considering applicants for the Building Commissioner position and did not participate in any interviews.  [Id. ¶ 28].

Following the filing of this lawsuit, the Board agreed to temporarily appoint Piccirilli to continue to serve as the Building Commissioner, [Seelig Aff. ¶ 31], until the Court's decision on the motion for preliminary injunction or July 20, 2021, whichever is earlier.  Piccirilli maintains that he has faithfully carried out his duties, is fully qualified for the position, and has no history of employee discipline.[2]  [Compl. ¶¶ 37–39].

---

[2] Piccirilli submitted a declaration from the former Town clerk with his reply brief.  The declaration explains that Andrews told the former clerk that it was his plan to make sure Piccirilli was not reappointed when his term expired on June 30, 2021.  [ECF No. 14-1 ¶¶ 10–13].

### B.      Procedural Background

Piccirilli filed his verified complaint and motion for a preliminary injunction on June 22, 2021.  [ECF Nos. 1, 2].  Defendants oppose the motion, and Andrews has also separately filed a special motion to dismiss pursuant to the Massachusetts Anti-SLAPP statute.  [ECF Nos. 12, 13].  Piccirilli then filed a reply in support of his preliminary injunction motion and opposed the special motion to dismiss.  [ECF No. 14].  Piccirilli's complaint asserts that Defendants: (1) deprived him of his Fourteenth Amendment right to substantive and procedural due process in violation of 42 U.S.C. § 1983 (Count I), [Compl. ¶¶ 45–51]; (2) deprived him of his Fourteenth Amendment right to equal protection in violation of 42 U.S.C. § 1983 (Count II), [id. ¶¶ 52–57]; and (3) violated his right to due process and equal protection under Article X of the Massachusetts Declaration of Rights (Count III), [id. ¶¶ 58–66].

On July 13, 2021, the Court held a hearing on Piccirilli's motion for preliminary injunction and took the motion under advisement.  [ECF No. 15].

## II.      MOTION FOR PRELIMINARY INJUNCTION

### A.      Legal Standard

Preliminary injunctions function to "preserve the relative positions of the parties until a trial on the merits can be held."  Univ. of Tex. v. Camenisch, 451 U.S. 390, 395 (1981).  As a result, "findings of fact and conclusions of law made by a court granting a preliminary injunction are not binding at trial on the merits."  Id. (citing Indus. Bank of Wash. v. Tobriner, 405 F.2d 1321, 1324 (D.C. Cir. 1968)).  A preliminary injunction is "an 'extraordinary and drastic remedy,'" Voice of the Arab World, Inc. v. MDTV Med. News Now, Inc., 645 F.3d 26, 32 (1st Cir. 2011) (quoting Munaf v. Geren, 553 U.S. 674, 689–90 (2008)), which "may only be awarded upon a clear showing that the plaintiff is entitled to such relief," Winter v. Nat. Res.

Def. Council, Inc., 555 U.S. 7, 22 (2008) (citing Mazurek v. Armstrong, 520 U.S. 968, 972 (1997)).

When deciding whether to grant a motion for preliminary injunction, courts must consider four factors:

> (i) the movant's likelihood of success on the merits of its claims; (ii) whether and to what extent the movant will suffer irreparable harm if the injunction is withheld; (iii) the balance of hardships as between the parties; and (iv) the effect, if any, that an injunction (or the withholding of one) may have on the public interest.

Corp. Techs., Inc. v. Harnett, 731 F.3d 6, 9 (1st Cir. 2013).  As the moving party, Piccirilli bears the burden of satisfying each of these four elements.  See Nieves–Marquez v. P.R., 353 F.3d 108, 120 (1st Cir. 2003).

The First Circuit has held that these four factors "are not entitled to equal weight in the decisional calculus." Corp. Techs., 731 F.3d at 9.  Rather, the movant's likelihood of success on the merits "is the main bearing wall of the four-factor framework." Id. at 10.  "[P]roving likelihood of success on the merits is the 'sine qua non' of a preliminary injunction." Arborjet, Inc. v. Rainbow Treecare Sci. Advancements, Inc., 794 F.3d 168, 173 (1st Cir. 2015) (quoting New Comm Wireless Servs., Inc. v. SprintCom, Inc., 287 F.3d 1, 9 (1st Cir. 2002)).  Therefore, "[i]f the moving party cannot demonstrate that [it] is likely to succeed in [its] quest, the remaining factors become matters of idle curiosity." Id. (quoting New Comm Wireless Servs., 287 F. 3d at 9).

**B.     Discussion**

1.     Likelihood of Success

Piccirilli has not met his burden under this prong of the preliminary injunction standard because he has not sufficiently established that he has a constitutionally protected property

interest in his continuing reappointment to the Building Commissioner position, and therefore he is not likely to succeed on the merits of his due process claims.[3, 4]

The Fourteenth Amendment to the U.S. Constitution provides that "No State shall . . . deprive any person of life, liberty, or property, without due process of law . . . ."  U.S. Const. amend. XIV, § 1.  To state a procedural due process claim, Piccirilli must allege that: (1) he, as a government employee, possessed a property interest in his continued employment; and (2) Defendants, acting under color of state law, deprived him of that property interest without a constitutionally adequate process.  See Figueroa-Serrano v. Ramos-Alverio, 221 F.3d 1, 6 (1st Cir. 2000); see also Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 541 (1985).  "In order to assert a valid substantive due process claim, [Piccirilli has] to prove that [he] suffered the deprivation of an established life, liberty, or property interest, and that such deprivation occurred through governmental action that shocks the conscience."  Clark v. Boscher, 514 F.3d 107, 112 (1st Cir. 2008).

---

[3] At the July 13, 2021 motion hearing, Piccirilli abandoned his equal protection claims and is no longer seeking injunctive relief on those grounds.

[4] Piccirilli's briefing in support of his preliminary injunction motion does not explicitly differentiate between his due process claims brought pursuant to the Fourteenth Amendment of the U.S. Constitution and Article X of the Massachusetts Declaration of Rights.  The Court notes that "the federal and Massachusetts standards for a procedural due process analysis are identical," Christensen v. Kingston Sch. Comm., 360 F. Supp. 2d 212, 215 n.1 (D. Mass. 2005), and "[g]enerally, Massachusetts applies the same standards for state substantive due process claims as those applied for a federal substantive due process analysis," Macone v. Town of Wakefield, No. 99-cv-02178, 2003 WL 21960670, at *3 (Mass. Super. July 16, 2003).  At least one Massachusetts court has noted there "are situations where Massachusetts courts have found that the Massachusetts Declaration of Rights provides greater substantive due process protections [than federal due process]," id., but Piccirilli has not argued that any greater protections apply in this case, or, more importantly, that the property interest analysis under Article X differs from that under the Fourteenth Amendment.  Therefore, the Court assumes for the purposes of this case that the property interest analysis applies with equal force to Piccirilli's Fourteenth Amendment and Article X claims.

Both of Piccirilli's due process claims require a constitutionally protected property interest.[5] In <u>Board of Regents of State Colleges v. Roth</u>, the Supreme Court explained that:

> [t]o have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. It is a purpose of the ancient institution of property to protect those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined . . .
>
> Property interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.

408 U.S. 564, 577 (1972).

Piccirilli argues that he has a constitutionally protected property interest in his reappointment because "every salaried Town employee who has requested reappointment to his or her position, for at least the last decade, has been reappointed." [ECF No. 14 at 2]. In Piccirilli's view, this longstanding practice has created the reasonable expectation of reappointment and, therefore, a property interest. [Id.]. Defendants counter that numerous state and federal cases all lead to the same conclusion: once a Town employee's term of appointment has expired, there is no property interest in the position. [ECF No. 13 at 3–7].

Defendants argue that this case is indistinguishable from <u>Metivier v. Connor</u>, 283 F.3d 391 (1st Cir. 2002), which compels the conclusion that Piccirilli has no property interest. In <u>Metivier</u>, the First Circuit summarily affirmed the district court's decision that a town accountant, who was not reappointed after her three-year term, had no property interest in reappointment to the position. Id. at 392. The district court had reasoned that "[n]o provision of the Town Charter or of Massachusetts state law secures [plaintiff's] interest in reappointment or

---

[5] Piccirilli does not allege that he has been deprived of life or a liberty interest.

creates any legitimate claim to it." <u>Metivier v. Town of Grafton</u>, 148 F. Supp. 2d 98, 107 (D.

Mass. 2001).  The plaintiff did not point to any other source for her property interest other than

the town charter and state laws.  The First Circuit affirmed, explaining that once

> [plaintiff's] position as Town Accountant was terminated after the end of a fixed
> three-year term, [pursuant to a state statute that provided a Town Accountant
> would serve for three years], . . . she had only holdover status.  She was neither a
> fixed term employee nor an employee for an indefinite term.  Thus, she had no
> property interest in her job under the town charter or under state law.

<u>Metivier</u>, 283 F.3d at 392.  While <u>Metivier</u> presents very similar facts, it is distinguishable from

the instant case because of the different theories advanced by the respective plaintiffs in each

case.  Unlike <u>Metivier</u>, Piccirilli's property interest theory is based on the Town's customs and

practices, rather than a state statute or Town charter.

     Piccirilli cites to <u>Perry v. Sindermann</u>, 408 U.S. 593, 599 (1972) in support of his

argument that the Town's practice of reappointing all salaried officials creates a property interest

in his reappointment.  In <u>Perry</u>, a junior college declined to renew a professor's one-year

teaching contract, which had previously been renewed four times.  <u>Id.</u> at 594–95.  The professor

sued the junior college, alleging, in relevant part, that his right to procedural due process was

violated because the junior college did not provide him with a hearing prior to nonrenewal.[6]  <u>Id.</u>

at 595.

     The Supreme Court first analyzed whether the professor had established that he had been

deprived of a property interest.  <u>Id.</u> at 598.  Although the professor was admittedly not tenured,

he alleged that there was a "de facto" tenure system pursuant to an "understanding fostered by

the college administration."  <u>Id.</u>  The professor argued that he and other members of the faculty

relied on a provision in the junior college's Faculty Guide that said "[t]he Administration of the

---

[6] The professor also raised First Amendment claims, which are not at issue in this case.

College wishes the faculty member to feel that he has permanent tenure as long as his teaching services are satisfactory and as long as he displays a cooperative attitude toward his co-workers and his superiors, and as long as he is happy in his work." Id. at 600.  Taking these facts in the light most favorable to the professor, the Court found that he had raised a genuine issue of fact as to whether he had a property interest in his continued employment and remanded the case for further proceedings.  Id.  In reaching its decision, the Court reasoned that a contract with an explicit tenure provision is not necessary to show a property interest in reemployment, and "[a] person's interest in a benefit is a 'property' interest for due process purposes if there are such rules or mutually explicit understandings that support his claim of entitlement to the benefit and that he may invoke at a hearing." Id. at 601.

Following Perry, the First Circuit recognized that "[t]he Supreme Court left open the possibility that some employees could have a property interest in the renewal of their term contracts.  While mere subjective expectancy of renewal is not enough, the policies and practices of an institution might give rise to such a claim." Hatfield-Bermudez v. Aldanondo-Rivera, 496 F.3d 51, 59–60 (1st Cir. 2007) (citing Perry, 408 U.S. at 594–95, 603).

Perry and the First Circuit's subsequent holdings demonstrate that an express contract provision, statute, or bylaw is not necessary to establish a legitimate expectation in continuing employment and allow for the possibility that the policies and practices of a town could give rise to a property interest.  Based on the record before the Court, however, Piccirilli has not established that he is likely to succeed in demonstrating that he has a property interest in his continued reappointment.  At most, Piccirilli has shown that the Town, for many years, has reappointed those salaried officials who wanted to be reappointed, but it is far from clear that this is sufficient to establish a property interest.  In Perry there was an affirmative, written statement

by the junior college indicating that a professor would not be fired if his teaching remained satisfactory.  Perry, 408 U.S. at 600.  Piccirilli has not identified any representation, either written or verbal, by Defendants, to show a mutual understanding that Piccirilli had a property interest in reappointment.

The analysis in Nwaubani v. Grossman, 199 F. Supp. 3d 367 (D. Mass. 2016), is also instructive.  In Nwaubani, the plaintiff was a tenured history professor who also served as the director of a university's "African-American Studies Program."  Id. at 369.  The professor alleged a violation of his due process rights because he was removed from the directorship without adequate process.  Id. at 376.  He argued that even though he did not have an employment contract, "he had a legitimate expectation that [the director] position was protected because it was the University's practice that Program Directors and chairpersons held those positions for 'considerable lengths of time.'"  Id. at 378.  Following a hearing, the court found that this practice, without additional evidence such as a representation from the university, was insufficient to demonstrate that the professor had a property interest in continuing as the director for a "considerable length of time."  Id. at 379.  Here, Piccirilli similarly relies solely on the past reappointment of other officials and does not point to any other evidence to show his property interest in continued reappointment.  [ECF No. 14 at 2].

In sum, Piccirilli has failed to make the requisite "clear showing" that he is likely to succeed on the merits of his due process claims and therefore is entitled to injunctive relief at this stage.  See Winter, 555 U.S. at 22.  The Court again notes, however, that "findings of fact and conclusions of law made by a court granting a preliminary injunction are not binding at trial on the merits."  Camenisch, 451 U.S. at 395 (citations omitted).  Although the Court cannot find a

likelihood of success on the merits based on the record currently before it, it is plausible that Piccirilli will be able to establish a property interest with the benefit of discovery.

        2.    <u>Remaining Preliminary Injunction Factors</u>

As noted above, "proving likelihood of success on the merits is the 'sine qua non' of a preliminary injunction." <u>Arborjet, Inc.</u>, 794 F.3d at 173 (quoting <u>New Comm Wireless Servs.</u>, 287 F.3d at 9). Because Piccirilli has not satisfied that factor, the Court will not analyze the remaining factors other than to note, as more fully discussed at the July 13, 2021 hearing, that it seems unlikely that there is irreparable harm.

## III.      SPECIAL MOTION TO DISMISS

Andrews argues that the suit against him should be dismissed pursuant to the Massachusetts Anti-SLAPP statute, Mass. Gen. Laws ch. 231, § 59H. He maintains that Piccirilli's sole reason for bringing this lawsuit is that Andrews sued him. [ECF No. 13 at 19].

As stated on the record at the July 13, 2021 motion hearing, Andrews' motion to dismiss is <u>DENIED</u>. The non-moving party may survive a special motion to dismiss if he can demonstrate that each of his claims "was not primarily brought to chill the special movant's legitimate petitioning activities." <u>Blanchard v. Steward Carney Hosp., Inc.</u>, 75 N.E.3d 21, 38 (Mass. 2017) (explaining that the non-moving party "must establish, such that the motion judge may conclude with fair assurance, that [his] primary motivating goal in bringing [his] claim, viewed in its entirety, was not to interfere with and burden defendants' . . . petition rights, but to seek damages for the personal harm to [him] from [the] defendants' alleged . . . [legally transgressive] acts" (final two alterations in original) (citations and internal quotation marks omitted)).

Here, it seems apparent that Piccirilli brought these claims to seek relief related to his employment situation and not because of the lawsuit that Andrews has filed against him.[7]

## IV.      CONCLUSION

Accordingly, Piccirilli's motion for a preliminary injunction, [ECF No. 2], and Andrews' special motion to dismiss, [ECF No. 12], are <u>DENIED</u>.  The parties are ordered to file a status report within ten (10) days of the appointment of anyone to the Building Commissioner position.

**SO ORDERED.**

July 19, 2021                                                      /s/ Allison D. Burroughs
                                                                    ALLISON D. BURROUGHS
                                                                    U.S. DISTRICT JUDGE

---

[7] The pending lawsuit filed by Andrews against Piccirilli, at least at this stage, raises more questions about why Piccirilli was not reappointed than it does about the motivation for the instant case.